UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
──────────────────────────────────────────X

**R.C. and M.C.** individually, and on behalf of their child, a minor,

Plaintiffs,

-against-

**Garden City Union Free School District**

Defendant.
──────────────────────────────────────────X

No. 24-cv-8328

**COMPLAINT FOR ADMINISTRATIVE REVIEW OF ERRONEOUS STATE REVIEW OFFICER DECISION**

Individuals with Disabilities Education Act;
N.Y. Educ. Law § 4401 *et seq*.

Plaintiffs, R.C. and M.C. (Parents), individually and on behalf of their minor child, Student, allege the following against Defendant, Garden City Union Free School District (GCSD):

## STATEMENT OF THE CASE

Parents ask this Court to vacate, in part, the SRO's erroneous decision and reinstate the IHO's correct decision, with modifications to the relief as requested below.

## PARTIES

1. Student is a "child with a disability" as defined by Individuals with Disabilities Education Act (IDEA). 20 U.S.C. § 1400, *et seq*.

2. Parents and Student have resided at all relevant times within the geographical area served by GCSD.

3. Defendant GCSD is the Local Educational Agency (LEA) responsible for providing Student with a FAPE under the IDEA, the Rehabilitation Act of 1973, and New York's education statutes and administrative code.

4. GCSD's administrative offices are located at 56 Cathedral Ave., Garden City, NY 11530.

## JURISDICTION AND VENUE

5. The Court has subject matter jurisdiction over this action under the IDEA, 20 U.S.C. § 1400, *et seq.*, and 28 U.S.C. § 1331, which confers jurisdiction in cases arising under the Constitution and laws of the United States.

6. The Court has supplemental jurisdiction to adjudicate New York state law claims arising out of the same facts as in the asserted federal claims. 28 U.S.C. § 1367.

7. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b)(l) as GCSD has its principal offices in this District.

8. Plaintiffs have exhausted their administrative remedies for all claims that require exhaustion.

## LEGAL FRAMEWORK

9. This is an action under the IDEA, 20 U.S.C. § 1400, *et seq.*, which guarantees Student a free appropriate public education (FAPE).

10. Congress created the statutory right to a FAPE in 1976, when it enacted the IDEA. But the formal right to FAPE was grounded in both the Equal Protection and Due Process clauses of the Fifth and Fourteenth Amendments. Following the Supreme Court's decisions in *Brown v. Bd. of Educ.*, 347 U.S. 483 (1954), courts extended the non-discrimination rights recognized for persons of color to exceptional children. *See Penna. Assn. v. Commw.*, 334 F. Supp. 1257 (E.D. Pa. 1971), 343 F. Supp. 279 (1972), and *Mills v. Bd. of Educ. of D.C.*, 348 F. Supp. 866 (D.D.C. 1972). With the IDEA's passage, children with disabilities are entitled to a meaningful education and the right to be free of discrimination in their education. Crucially, they and their parents are entitled to "due process" in securing these rights.

11. Where a public school district like GCSD is unable to provide a child FAPE, Parents may file an administrative "Due Process" action before a state-appointed impartial hearing officer (IHO). The case is then litigated in a Due Process hearing (a bench trial).

12. The IHO is the trier of fact and is responsible for making determinations of law and judgments as to credibility, merit, and weight.

13. The IDEA affords courts and IHOs broad discretion in awarding remedies where a district denies a child FAPE.

14. New York has a "two-tiered" Due Process system. After an IHO issues a "findings of fact and decision" (FOFD), an aggrieved party may seek review before a State Review Officer (SRO) in the New York Office of State Review.

15. While the SRO is charged with reviewing the IHO's findings of fact and law, it must defer to the IHO's credibility and factual findings absent a compelling reason to reject them.

## BACKGROUND

a. **Parents filed a Due Process complaint and prevailed in full following a 17-day, heavily contested Due Process hearing.**

16. On June 16, 2023, Parents filed a Due Process complaint alleging, among other things, that GCSD had failed in its "Child Find" responsibilities towards Student under the IDEA, failed to timely evaluate student to determine whether he qualified as a "child with a disability," failed to evaluate Student appropriately once it did belatedly undertake to evaluate him, failed to conduct a proper Committee on Special Education (CSE) meeting in May 2022 by denying Parents meaningful participation, failed to offer Student an appropriate IEP in May 2022 and in February 2023, and then disregarded the IDEA in refusing: (1) to provide Parents an independent educational evaluation (IEE) at public expense, or (2) to file a Due Process action to prove that its evaluation were appropriate. *See* Parents' Complaint, attached as Ex. A.

17. Richard D. Marsico, Esq. was appointed as IHO on June 21, 2023.

18. After several preliminary conferences and initial motion practice, IHO Marsico presided over a Due Process hearing spanning seventeen (17) days (more than 2500 transcript pages) of testimony between November 9, 2023 and April 22, 2024. The parties introduced over 110 combined exhibits.

19. The parties submitted simultaneous closing briefs on June 14, 2024.

20. On July 30, 2024, IHO Marsico issued a 54-page, single-spaced FOFD, which contained 262 detailed findings of fact supported by precise citations to the testimonial and documentary record and the law. Based on this extensive record, he reached legal holdings almost entirely in Parents' and Student's favor. *See* FOFD, attached as Ex. B.

21. Throughout his decision, IHO Marsico made express and implicit credibility findings in favor of Parents and their expert witnesses, and made negative credibility findings against several of GCSD's witnesses. He also found that the District unlawfully withheld records from Parents and, without explanation, improperly modified Student's educational records by removing current, salient information provided by Parents' expert and unilaterally changing Student's special education classification.

22. He held that GCSD was negligent in failing to "find" Student as a child with a Disability by the late fall of 2021. Ex. B at 44.

23. He held that GCSD failed to evaluate Student properly when it did not utilize information gathered to classify him appropriately. *Id*.

24. He held that GCSD failed to evaluate Student's visuospatial deficits and failed to evaluate him for a learning disability. *Id*. at 45.

25. He held that GCSD's failure to evaluate Student led it to prepare an IEP in May 2022 that was not calculated for Student to make progress appropriate in light of his circumstances. *Id*.

26. He held that GCSD failed to identify Student with attention deficit hyperactivity disorder (ADHD) despite obvious signs. *Id*. at 45-46. He held that this misclassification made it impossible for GCSD to determine what progress was appropriate for Student and what services he needed to accommodate and/or remediate the negative effects of ADHD. *Id*. at 46.

27. He held that GCSD failed to conduct a vision evaluation for Student despite its having clearly recognized the need to do so, and so was unable to prepare an IEP calculated to allow Student to make progress appropriate in light of his circumstances. *Id*. at 46-47.

28. He held that GCSD failed to gather information necessary to determine whether Student had a learning disability, despite the record being "replete with evidence" of "a disability in reading, writing, and math." *Id*. at 47.

29. He held that GCSD's failure to evaluate Student for learning disabilities interfered with its ability to develop an IEP reasonably calculated to allow Student to make progress appropriate in light of his circumstances. *Id*. at 47-49.

30. He held that GCSD also violated the IDEA's provisions on IEEs when it failed to file a Due Process action despite refusing to grant Parents' request for an IEE. *Id*. at 49-51.

31. The IHO ordered GCSD to reimburse Parents for their independent vision assessment ($295), neuropsychological evaluation ($3,191), and reading assessment ($1,500). He also ordered GCSD to provide Parents reimbursement for Student's vision therapy, which they had paid for ($2,510) and for which they would incur costs in the future (48 x $170 = $8,160). *Id*. at 51-52.

32. The IHO ordered GCSD, based on the unrebutted testimony of independent evaluator and Parent expert Dr. Erin McDonough, to provide Parents and Student with 240 hours of compensatory education at $200/hour, or $48,000 to be used for occupational therapy and reading services.

b. **GCSD files a Request for Review to the SRO, which affirms the IHO's decision in part, but erroneously reverses the IHO's holdings that the District failed in its Child Find duties, failed to offer Student at FAPE for the 2021-22 and 2022-23 school years, and denied Parents meaningful participation in the IEP process.**

33. On September 6, 2024, GCSD filed a verified Request for Review (RFR) to the SRO.

34. The RFR raised five issues for review.

35. Parents filed an Answer and Counterclaim on September 30, 2024.

36. In an October 31, 2024 decision, SRO Justyn P. Bates dismissed GCSD's appeal with respect to the IHO's holding that it violated the IDEA's IEE provisions. *See* SRO Op. No. 24-377, attached as Ex. C. The SRO sustained GCSD's appeal with respect to the IHO's holdings that it violated the IDEA's Child Find provision, and that it had failed to offer Student a FAPE for the 2021-22 and 2022-23 school years. The SRO vacated the IHO's order granting Parents compensatory education and reimbursement for vision services. He sustained the IHO's order granting Parents reimbursement for IEEs.

## CLAIMS FOR RELIEF

### Count I
### IDEA, New York Education Code
### *Reversal of SRO Decision*

37. Parent incorporates by reference each allegation stated above.

38. Parents and Student are entitled to a FAPE from Defendant GCSD under the IDEA and the New York Education Code.

39. The IHO correctly held that GCSD denied Parents and Student a FAPE, and properly awarded them appropriate relief.

40. As explained below, the SRO made numerous legal and factual errors in vacating aspects of the IHO's FOFD. The following errors are illustrative, not exhaustive.

41. The SRO (and IHO) erred as a matter of law in holding that the IDEA's statute of limitations cut off Parents' IDEA claims before June 14, 2021 (2-years before the filing of the Complaint). The exceptions to the IDEA's statute of limitations apply here because: (i) GCSD made specific misrepresentations to Parents that prevented them from knowing of Student's disability, and (ii) GCSD withheld pupil records to which Parents were entitled under the IDEA – records that would have given them knowledge of Student's disability and alerted them to the District's IDEA violations. The District also failed to provide Parents with IDEA-required procedural safeguards when it negligently refused to commence an initial evaluation of Student.

42. The SRO erred as a matter of law in holding that the IDEA's statute of limitations precluded it from considering evidence from outside of the purported limitations period to show that GCSD failed in its Child Find obligations within the undisputed limitations period. *See* Ex. C at 14. Specifically, the SRO held: "[I]n finding that the parents' claims prior to June 20, 2021 were barred by the applicable statute of limitations, the parents' child-find claims relating to the 2019-20 and 2020-21 school years are precluded and will not be further discussed." *Id*. As numerous courts have held, the statute of limitations is a defense, not a rule of evidence. *See, e.g.*, *M.S. v. Randolph Bd. of Educ.*, No. 18-13029 (KSH) (CLW), 2019 U.S. Dist. LEXIS 169184, at *20-21 (D.N.J. Sep. 30, 2019).

43. Parents' claim that the District should have "found" Student as a child with a disability by June 2021 was indisputably timely, yet the SRO refused even to consider *any*

background facts that were available to the District in June 2021 because, in the SRO's view, such *background evidence* was somehow time-barred.

44. The IHO made numerous express findings of fact supporting his holding that in the two years before the 2021-22 school year, GCSD acted negligently and without a rational basis in failing to identify Student as a child with a disability. Ex. A at 44.

45. Relying on his erroneous interpretation of the IDEA's statute of limitations, the SRO categorically ignored the IHO's findings of fact, based on ample, incontrovertible evidence, with respect to Student's struggles in kindergarten and first grade. As a result, the SRO disregarded overwhelming documentary and testimonial evidence that GCSD recognized but failed to act on or inform the Parents of numerous signs of Student's disability before the fall of 2021.

46. The SRO did not grapple with the IHO's findings of fact with respect to Student's academic experience leading up to the fall of 2021. *See, e.g., C.L. v. N. Y. City Dep't of Educ.*, 2013 U.S. Dist. LEXIS 3474, at *20-21 (S.D.N.Y. Jan. 2, 2013) ("Whether the SRO impermissibly reversed the IHO's credibility determinations (as plaintiffs claim) or merely weighed the evidence and came to a different conclusion (as the Department claims), ***the critical fact remains that the SRO did not grapple with contrary evidence and gave no explanation for why***….") (emphasis added).

47. The SRO then made incorrect factual findings that Student made academic progress in several areas, relying solely on conclusory District documents and witness testimony that the IHO rightly discredited. The SRO made these findings of fact without grappling with the far more detailed, contrary findings by the IHO – findings he reached after presiding over the 17-day hearing and reviewing the entire documentary and testimonial record.

48. For example, the SRO relied solely on Student's second grade report cards – documents with generalized evaluative language that District witnesses had to concede did not capture Student's individualized performance – to find that Student was somehow meeting standards and reading at grade level by the spring of 2022. Ex. C at 19. However, as the IHO found (and the SRO inexplicably disregarded), there was ample evidence in the record, much of which GCSD kept from Parents until trial, showing that Student was severely struggling to read and had done so since kindergarten. The IHO noted the following indicators (all internal to the District, *unavailable to Parents*) of Student's reading difficulty (*i.e.*, undiagnosed dyslexia), all of which the SRO failed to grapple with:

- Student struggled in several measures of reading in kindergarten and was below most of his peers. Ex. B at 10, 42;

- Student was one of only three students in his class in kindergarten who did not make reading progress between November and January. *Id*. at 10; Ex. 49:1;

- Student was tied for the second lowest score on the Fundations Unit 1 test and tied for the sixth lowest score on Unit 2. He also had the third lowest grade on the mid-unit Fundations check. *Id*.; Ex. 49:2.

- Student was able to read only 39 of 100 high frequency words, which was the third lowest in the class. In contrast, nine students read 80 words or more, including one student who read 100 words and another who read 95. *Id*.

- Student scored poorly on almost all reading indicators in first grade, but Parents were not informed of those struggles. *Id.* at 11, 42-43;

- Student's second grade teacher noticed by September 21, 2021 that he "may benefit from math and/or reading" instruction. *Id*. at 12;

- Student remained at reading "level K" throughout almost all of second grade. *Id.* at 12;

- District psychologist Danielle Warnke wrote in March 2022 that Student's reading was below grade expectations. *Id*. at 15; Ex. CC-4;

- Student's scores on Wilson *Fundations* assessments were unreliable because he was allowed to look at a "word wall," which gave him the answers to the assessments. *Id*, at 12-13;

9

- Student scored 50% and 67% on *Fundations* assessments in the spring of 2022 despite having access to the word wall. *Id*. at 13.

- Student's ELA scores on the NWEA assessments were amongst the lowest in his class. *Id*.

There was no basis for the SRO to credit the vague, non-individualized narratives in Student's report cards that he was reading at grade level over the contrary, far more specific documentary and testimonial evidence, including the unrebutted and corroboratory testimony of several credible experts, cited by the IHO.

49.     The SRO further erred in finding that the District itself sought out vision testing for Student, which it did not, ignoring that the IHO expressly found that claim by the District to be non-credible. *Compare* Ex. B at 32, n.16 (IHO finds that District psychologist Danielle Warnke "not credible" when she testified that the District's CSE recommended a vision evaluation for Student) *with* Ex. C at 26 (SRO states that the District was well aware of the Student's needs and deficits identified through the evaluation process and in fact, when needed, sought additional testing to gather more detailed information on the student's needs.); *id*. at 33 ("The CSEs had noted areas of weakness in the student's visouperceptual [*sic*] abilities gleaned from the district's visual and spatial testing of the student and sought consent from the parent to conduct further vision testing."). Indeed, the SRO's finding that the District timely sought out vision testing on its own initiative demonstrates his basic misreading and disregard of the record.

50.     The SRO erred in finding that Parents' vision expert, developmental optometrist Dr. Michele Bessler, failed to explain how her findings – which the IHO expressly adopted (Ex. B at 46-47) – "differed from [GCSD's] assessments and observations of the student's visual and spatial abilities in terms of identifying the student's educational needs or what aspect of the CSE's recommended programming was deficient to address those needs as identified by the district evaluations." Ex. C at 33. To the contrary, as the IHO held, both Dr. Bessler and independent

10

psychologist, Dr. Alyson Skinner – whom the IHO also expressly found to be credible (Ex. B at 27) – explained that GCSD's occupational therapy goals (supposedly related to Student's vision deficits) were deficient because they merely stated that Student "could not do certain things and state that he will accomplish them." Ex. B at 49.  Instead, GCSD should have developed goals based on how Student's visual processing was interfering with his ability to complete the enumerated tasks. *Id*. The SRO did not acknowledge or grapple with this finding, or the credible evidence illustrating how the vision deficits negatively impacted Student academically, except to say, without explanation, that it would be a "minor deficiency" for these motor skills/writing goals to be "lacking." Ex C at 35.  The SRO failed to explain how offering inadequate visual/motor skills/writing goals *for a child with dysgraphia* was a "minor deficiency." These inadequate goals represented the District's only intervention for Student's severe writing disability.

51. The SRO erred in finding that independent reading expert, Dr. Erin McDonough, "did not reach a different conclusion than the district with respect to the student's deficits in reading and writing." Ex C. at 34.  To the contrary, as the IHO held, Dr. McDonough, unlike GCSD, diagnosed Student with dyseidetic dyslexia and dyslexic dysgraphia, and she recommended that Student receive "multi-sensory, evidence-based reading instruction" from a "highly trained dyslexia specialist." Ex. B at 38. The SRO failed to acknowledge or grapple with this expert opinion and recommendation – which clearly supported the IHO's conclusion that the District failed to offer Student a FAPE for both the 2021-22 and 2022-23 school years.

52. The SRO erred in relying solely on Student's February 2023 IEP to find that Student made progress in reading in third grade, Ex. C at 29-30, a finding wholly at odds with the overwhelming documentary and testimonial evidence, credited by the IHO, that he made little progress.  Thus, the SRO cites Student's February 2023 IEP alone for the proposition that Student

11

could "decode closed single-syllable words with up to five sounds…." Ex C at 30. But during the Due Process hearing, Student's reading tutor, Elona Roth, conceded, when confronted by *her own data*, that, for more than two months *after that February 2023 CSE meeting,* Student failed to achieve the goal of decoding five-sound closed syllable words. Ex. BB; Ex. 38 at 1-4; 341:18-342:14. In other words, the February 2023 IEP's reported present level of performance in reading was *inaccurate* and the SRO had no basis to cite it – certainly not without grappling with the clear evidence to the contrary. Moreover, the IHO credited Dr. McDonough's testimony that Student made "exceedingly slow" progress in his Wilson Reading program, in third grade. Ex. B at 25. The SRO inexplicably ignored this testimony.

53. With respect to writing in third grade, the IHO rightly credited Dr. McDonough's testimony that Student made little progress between first and third grades. Ex. B at 26-27. She reached this conclusion after reviewing Student's third grade handwriting samples. The following (Ex. PP-43) is just one third grade sample that both the IHO and Dr. McDonough reviewed:



Ignoring dozens of pages of Student's actual handwriting samples, which the IHO reviewed in conjunction with testimony from Parents' and District witnesses, the SRO relied solely on a cold, self-serving, narrative in an IEP that was refuted during cross-examination.

13

54. Put differently, no one during this extensive hearing *on either side* seriously argued that Student ever made meaningful progress in writing. The SRO reached this conclusion in the face of overwhelming evidence to the contrary, including Student's own teachers' cross examination admissions that they saw no progress in writing and could not explain that lack of progress. The same analysis applies to the SRO's suggestion that Student made progress in writing in his OT sessions. Ex C. at 31. The District's only OT witness, Ms. Tiffany Waldvogel, conceded that she only worked with Student for a few months in 2022 and had no memories of him.

55. The above factual and legal errors are merely illustrative. Overall, the SRO's decision, unlike the IHO's FOFD, fails to depict Student as he was: a boy who could not functionally read, write, or do math, who struggled with deficits in the interconnected domains of attention, executive functioning, social/emotional functioning, and vision, and who needed and needs intensive long-term intervention to make progress appropriate in light of his circumstances.

56. Moreover, the SRO inexplicably made arguments that GCSD itself never offered either at the hearing level or in its request for review. Repeatedly, it faulted the IHO and Parents for not proving that the District failed to offer a FAPE, rather than holding the District to its affirmative burden of showing that it did offer FAPE.

57. The SRO twice cited the Student's father's occupation as an education attorney to absolve the GCSD for its failure to provide information and documentation that it should have and in some cases was required to provide but did not. There is zero evidence suggesting that the father's professional occupation affected Parents' analysis of their son's educational experience. The SRO made these inferences against Student's father as if by judicial notice. The SRO therefore impermissible shifted the burden regarding the District's illegal withholding of information and

educational records, and baselessly held that Parents failed to argue how such requests and withholding prevented them from filing a Due Process complaint.

58. The SRO blatantly overlooked an abundance of evidence in the record, highlighted by Parents, surrounding misrepresentations by Student's teachers in kindergarten and 1st grade regarding his achievement levels, progress, performance relative to peers, and recommendations for and entry into AIS reading in kindergarten and 1st grade--neither of which Parents were informed about as required by law.

59. The SRO failed to grapple with or appreciate the ramifications of Dr. Kelly Spagnola's trial admission, which the IHO properly weighed, that she knew as early as June 2022 that she had made a legal error when she prevented Parents from discussing COVID compensatory services at Student's May 2022 CSE meeting, but did not admit her error until her trial testimony in November 2023.

60. The SRO also ignored Dr. Spagnola's incorrect statements – made during the initial eligibility CSE and at trial – that the Student was not "on the radar" for AIS supports in reading until spring 2022. As became clear during this hearing, the District learned by the summer of 2020 that Student needed additional support in reading and, *without telling Parents*, enrolled him in AIS support for the 2020-21 school year. Had Parents had this information, for instance, which was disclosed for the first time at trial, they could have weighed the information and possibly filed for Due Process as early as the fall of 2021.

61. Parents and Student have been denied a FAPE under the IDEA and the New York Education Code.

62. Wherefore, Parents ask that this Court reverse the SRO's decision, which is not well reasoned, and reinstate the IHO's far more detailed, informed, and well-reasoned FOFD.

## Count II
## IDEA
### *Attorneys' Fees*

63. Parents incorporate by reference each allegation stated above.

64. Parents prevailed in their due process action, as evidenced by the FOFD.

65. GCSD sought review of the FOFD before the SRO.

66. Parents prevailed before the SRO on the issue of GCSD's failure to comply with the IDEA's IEE provisions, which has consumed a substantial portion of the litigation to date. Parents believe they will further prevail in this action for review, requesting that this Court reverse the SRO's erroneous decision.

67. Parents are "prevailing parties" for under the IDEA, 20 U.S.C. § 1415(i)(3)(B), because: (a) the FOFD and SRO decision altered the legal relationship between Parents and GCSD in such a way as to benefit Parents directly, and (b) Parents succeeded on the merits in their action.

68. Should Parents prevail in this federal action, they will continue to be a prevailing party under the IDEA.

69. A prevailing party under the IDEA is entitled to reasonable attorneys' fees. 20 U.S.C. § 1415(i).

70. Wherefore, Parents are entitled to reasonable attorneys' fees for their Due Process hearing, SRO proceedings, and this action for administrative review of the SRO's erroneous decision.

71. Parents are further entitled to reasonable fees and costs for additional time expended and costs incurred in seeking attorney's fees in this federal action.

**RELIEF REQUESTED**

WHEREFORE, Plaintiffs respectfully request that this Court:

- Assume jurisdiction of this action.

- Find that the SRO erred when it reversed the IHO's FOFD, in part.

- Vacate the SRO's decision, in part, and reinstate the IHO's decision, with modifications as requested in this action.

- Find that Parents are prevailing parties under the IDEA.

- Award Parents reasonable attorneys' fees, costs and expenses.

- Award Parents pre- and post-judgment interest.

- Award any other relief this Court deems appropriate.

Dated: December 4, 2024  
New York, New York

Respectfully Submitted,

/s/ Benjamin J. Hinerfeld

Benjamin J. Hinerfeld (BH 2180)  
**LAW OFFICES OF BENJAMIN J. HINERFELD**  
Attorneys for Plaintiffs  
9 Stoddard Street  
   Plymouth, MA 02360  
1528 Walnut Street, Suite 1100  
   Philadelphia, PA 19102  
447 Broadway 2nd Floor  
   New York, NY 10013  
Office (508) 591-0385  
Cell (215) 694-7432  
Fax (215) 689-2423  
Ben@hinerfeldlaw.com