**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
R.C. and M.C., individually and on behalf of
their child, a minor,

                              Plaintiffs,

     v.

Garden City Union Free School District,

                              Defendant.
-----------------------------------------------------------X

               **MEMORANDUM AND ORDER**

               2:24-CV-8328 (LGD)

**LEE G. DUNST, Magistrate Judge:**

Plaintiffs R.C. and M.C. (hereinafter "Plaintiffs" or the "Parents"), individually and on

behalf of their minor child, R.C. (hereinafter, the "Student") commenced this action against the

Garden City Union Free School District (hereinafter "Defendant" or the "District") on December

4, 2024, pursuant to Section 1415(i)(2) of the Individuals with Disabilities Education Act

("IDEA").  On September 12, 2025, the District and Parents both sought leave to file motions for

summary judgment. *See* Electronic Case Filing ("ECF") Nos. 23, 25.

By their motion (ECF No. 23, and hereinafter, the "Parents' Motion" or "Parents' Mot."),

the Parents seek review and vacatur, in part, of the October 31, 2024 decision by the State

Review Officer (the "SRO") of the New York Department of Education (the "SRO Decision")

and the reinstatement, in part, of the Impartial Hearing Officer's ("IHO") July 30, 2024 Decision

(the "IHO Decision") on the Parents' due process complaint filed on June 16, 2023. The IHO

Decision found, in relevant part, that: (1) the District had failed in its "Child Find"

responsibilities towards Student under the IDEA; (2) the District failed to evaluate the Student

properly, resulting in an improper disability classification and inadequate Individualized

Educational Program ("IEP") goals and programming; (3) the District denied Parents

participation in the decision not to provide compensatory services to the Student; and (4) the Student is entitled to compensatory relief for the Child Find violation by the District. Parents seek to reinstate these IHO rulings, which they claim were erroneously reversed by the SRO. The District opposes the Parents' Motion (*see* ECF No. 26, hereinafter the "District's Opp.").

By its motion (ECF No. 27, hereinafter, the "District's Motion" or "District's Mot."), the District seeks to overturn, in part, both the IHO and SRO's decisions granting the Parents' request for a psychological and reading independent educational evaluation ("IEEs") at public expense. The Parents oppose the District's Motion (*see* ECF No. 24, hereinafter the "Parents' Opp.").

For the following reasons, the Court finds that: (1) the SRO's reversal of the IHO's decision finding a Child Find violation was not thorough and is not entitled to deference, and the Court therefore reinstates the IHO's finding; (2) the SRO's reversal of the IHO's finding that the Parents were not granted a fair opportunity to participate in the decision-making process was not well-reasoned and is not entitled to deference, and the Court reinstates the IHO's finding; (3) because the Court finds there was a procedural Child Find violation, the Court reinstates the IHO's award of compensatory relief for the Child Find violation; (4) the Court need not assess the substantive adequacy of the IEP after finding a procedural violation of the IDEA; and (5) the SRO and IHO both did not err in finding that the District should have funded the two additional IEEs requested by the Parents.

## I.   **BACKGROUND**

### A. Factual Background

The parties strongly disagree about the facts in this case and whether the Student made progress throughout his early academic endeavors. Thus, they jointly requested permission to not

file a Federal Rule of Civil Procedure 56.1 Statement, which the Court granted. *See* ECF No. 20; June 4, 2025 Order. As a result, the facts below and throughout this memorandum are derived and summarized, only in relevant part, from the Complaint (ECF No. 1, and hereinafter "Compl."), the parties' filings, the IHO Decision, the SRO Decision, and the extensive administrative record.

The Student was born on May 29, 2014. *See* SRO Record – District's Ex. 1 at 1. Since the 2019-20 school year, the Student has attended elementary school in the District. *See* ECF No. 1-2 (hereinafter the "IHO Complaint") ¶¶ 3-4. It is uncontested that Defendant is a public authority and local education agency under the Individuals with Disabilities Education Act ("IDEA") and is therefore required to provide disabled children a free appropriate public education ("FAPE"). *See* 20 U.S.C. § 1400, *et seq.* At all relevant times, the Student was eligible to receive special education programing, services, and support as provided for under the IDEA, as the Student is a "child with a disability" as defined by the IDEA. *See id.*; Compl. ¶ 1.

Beginning in the Student's kindergarten year (the 2019-20 school year), the Parents began expressing concern with the District concerning the Student's reading, writing, and math skills, as well as his fine motor and organization skills. *See* IHO Complaint ¶ 11. During the Student's second grade year, on May 19, 2022, the District's Committee on Special Education (the "CSE") met for an initial eligibility determination, which resulted in the development of an IEP for the Student for the remainder of the 2021-22 school. *See* IHO Compl. at ¶ 100. This IEP had a projected implementation date of June 6, 2022 and a projected end date to cover the remainder of the Student's second grade. *See* IHO Decision ¶ 135. At this meeting, the CSE also prepared an IEP for the entirety of the Student's third grade year to commence on September 1, 2022. *See id*. The Parents and District disagree on both the substantive and procedural adequacy

3

of the resulting IEPs, including, but not limited to, whether the District evaluated the Student soon enough so that the child could make academic progress (*see* Parents' Mot. at 5; District's Opp. at 24), and whether the resulting IEPs were substantively adequate in consideration of the Student's individual needs *(see* Parents' Mot. at 19-27; District's Opp. at 29-31). Moreover, the Parents claim that, at this May 2022 meeting, despite the Student's father's desire to discuss compensatory services for the Student, the District refused to do so. *See* Parents' Mot. at 28-29.

Due to the Parents' concerns regarding the Student's IEPs, in February 2023, the Parents requested the District reimburse them for an IEE consisting of three separate assessments: an independent psychological report, an independent vision assessment, and a reading assessment. *See* Parents' Opp. at 2. The District elected to fund only the vision assessment, writing that a "parent is entitled to only one IEE at public expense each time the school district conducts an evaluation with which the parent disagrees" and therefore, the district was "under no legal obligation to grant in excess of one independent evaluation" and not required to file due process to defend its evaluations. *See* SRO Record – Parents' Ex. L.

B. <u>The IHO Decision</u>

On June 20, 2023, the Parents filed the due process complaint seeking, in part, an IHO hearing on the following issues: (1) whether the Parents' claims against the District were barred by the IDEA's statute of limitations; and (2) whether the District denied the Student a FAPE in violation of the IDEA either procedurally or substantively by: (a) violating its Child Find responsibilities; (b) failing to evaluate the Student in all areas of suspected disabilities and using appropriate evaluative tools; (c) failing to classify the Student appropriately; (d) impeding on the Parents' opportunity to participate in the decision-making process regarding the provision of a FAPE; (e) denying Parents' request for reimbursement for IEEs; and (f) failing to prepare an IEP

for Student that was reasonably calculated to allow the Student to make academic progress. *See* IHO Complaint at 20-23.

The IHO conducted prehearing conferences on July 27, 2023, August 27, 2023 and October 19, 2023. *See* SRO Decision at 6. On June 30, 2023 the District filed a motion to dismiss the due process complaint. *See id*. The District later agreed that the motion to dismiss would be held "in abeyance" pending the impartial hearing. *See id.* The impartial hearing began on November 9, 2023, and, after seventeen days of proceedings, was completed on April 22, 2024. *See id.*

As relevant to the federal action, in a final decision dated July 29, 2024, the IHO made the following findings: (1) the District failed to offer the student a FAPE for the 2021-22 and 2022-23 school years (*see* IHO Decision at 41, 51, 53); (2) the District failed to evaluate the Student properly, resulting in an improper disability classification and inadequate IEP goals and programming (*see* IHO Decision at 47); and (3) in refusing to discuss compensatory services with the Parents (specifically the father) during the CSE meeting, the District impeded Parents' right to participate in the decision-making process regarding the provision of a FAPE to Student and thus violated the IDEA. S*ee* IHO Decision at 51.

Because the IHO found that the District denied the student a FAPE from January 2022 through June 20, 2023, the IHO awarded the Parents reimbursement for the private evaluations they sought as follows: (1) psychological evaluation in the amount of $3,191, (2) reading evaluation in the amount of $1,500, and (3) vision evaluation in the amount of $295. *See id.* at 51-53. Furthermore, the IHO found that the District should reimburse the Parents for vision therapy "in the amount of $2,510 and for future weekly therapy sessions up to a total of 48, at the rate of $170 per session." *Id.* at 52. Finally, regarding compensatory education, the IHO found

the Student should be provided with 240 hours of compensatory education services for his denial of a FAPE, consisting of 120 hours for occupational therapy ("OT") and 120 hours for reading tutoring with the award expiring two years from the date of the IHO order. *See id.* at 52-53.

C. The SRO Decision

On September 6, 2024, the District appealed the IHO Decision. *See* Compl. ¶ 33. The SRO issued its thirty-nine-page decision on October 31, 2024. In relevant part, the SRO reversed the IHO's decision concerning an alleged violation of the District's Child Find obligations and vacated the IHO's award of compensatory education arising from the alleged violation. *See* SRO Decision at 20. The SRO also reversed the IHO's finding that that the District failed to evaluate the Student properly, resulting in an improper disability classification and inadequate IEP goals and programming. *See id*. at 24. Next, the SRO overturned the IHO's finding that the District denied the Parents' right to participate in the CSE meeting. *See id.* at 26. Finally, the SRO upheld the IHO's decision to grant an IEE consisting of psychological, vision, and reading assessments at the District's expense. *See id.* at 37.

D. Federal Action

Following the administrative remedies discussed *supra*, the Parents filed this action in federal court on December 4, 2024. *See* ECF No. 1. On March 12, 2025, the parties consented to jurisdiction by the undersigned for all purposes. *See* ECF Nos. 13, 14. On September 12, 2025, the parties filed their respective Motions for Summary Judgment (ECF Nos. 23, 25) and Oppositions. *See* ECF Nos. 24, 26.

## II.   **DISCUSSION**

### A.  IDEA Statutory Framework

The IDEA requires the school district of residence of a child with a disability to offer that child a FAPE, which is defined as special education and related services, provided at public expense, that meet the standards of the State educational agency and are provided in conformity with an IEP. *See* 20 U.S.C. §§ 1400(d)(1)(A), 1401(9), 1414(d); *see also New York City Dep't of Educ. v. S.S.,* No. 09-CV-810-CM, 2010 WL 983719, at *5 (S.D.N.Y. Mar. 17, 2010). The New York State Department of Education ("DOE") creates an IEP through a local CSE. *See* N.Y. Educ. Law § 4402(1)(b)(1) (2013); *see also Neske v. Banks*, No. 22-CV-6946-AT, 2024 WL 1313160, at *1 (S.D.N.Y. Mar. 26, 2024), *appeal withdrawn*, No. 24-1145, 2024 WL 4677421 (2d Cir. Aug. 23, 2024). At a minimum, the CSE is composed of the student's parents, a regular or special education teacher, a school psychologist, a school district representative, an individual who can interpret the instructional implications of evaluation results, a school physician and a parent of another student with a disability. *See* N.Y. Educ. Law § 4402(1)(b)(1)(a). Together, the members of "[t]he CSE must examine the student's level of achievement and specific needs and determine an appropriate educational program." *R.E. v. New York City Dep't of Educ.,* 694 F.3d 167, 175 (2d Cir. 2012) (citing *Gagliardo v. Arlington Cent. Sch. Dist.,* 489 F.3d 105, 107–08 (2d Cir. 2007)). If the parent of a child with a disability believes the IEP proffered by a school district does not offer a FAPE, the IDEA provides "procedural safeguards that enable parents and students to challenge the local educational agency's decisions." *Murphy v. Arlington Cent. Sch. Dist.*, 297 F.3d 195, 197 (2d Cir. 2002) (citing 20 U.S.C. § 1415).

Either the parent or the school district may file a due process complaint and request a due process hearing with respect to a challenged IEP. *See* 20 U.S.C. § 1415(b)(6). In New York, there is a two-tier process for reviewing IDEA due process complaints: first, the claims are heard by an IHO, whose decision can then be appealed to the SRO, as occurred in the within action. *See* N.Y. Educ. Law § 4404. Next, either the parent or the school district may seek judicial review of SRO's decision in state or federal court. *See* 20 U.S.C. § 1415(i)(2).

B. Standard of Review

A motion for summary judgment effectively functions as an appeal from the SRO's administrative decision. *See M.H. v. New York City Dep't of Educ.,* 685 F.3d 217, 226 (2d Cir. 2012) ("Though the parties in an IDEA action may call the procedure 'a motion for summary judgment,' the procedure is in substance an appeal from an administrative determination, not a summary judgment [motion]." (citation omitted)). "The district court must engage in an independent review of the administrative record and make a determination based on a preponderance of the evidence." *Hardison v. Bd. of Educ. of the Oneonta City School Dist.,* 773 F.3d 372, 385–86 (2d Cir. 2014) (internal quotation marks and brackets omitted). In undertaking this independent review, courts are "restrained by our lack of specialized knowledge and educational expertise; we must defer to the administrative decision particularly where the state officer's review has been thorough and careful." *M.W. ex rel. S.W. v. New York City Dep't of Educ.,* 725 F.3d 131, 138–39 (2d Cir. 2013) (internal quotation marks and brackets omitted). "While we will not rubber stamp administrative decisions, we remain equally mindful that we cannot substitute our own notions of sound educational policy for those of the school authorities under review." *Id.* at 139 (internal quotation marks omitted).

A district court's analysis of such an appeal ultimately hinges on "whether the decision being reviewed is well-reasoned, and whether it was based on substantially greater familiarity with the evidence and the witnesses than the reviewing court." *M.H. v. New York City Dep't of Educ.*, 685 F.3d 217, 244 (2d Cir. 2012). "Determinations grounded in thorough and logical reasoning should be provided more deference than decisions that are not." *Id.* Courts generally "defer to the final decision of the state authorities, even where the reviewing authority disagrees with the hearing officer." *A.C. ex rel. M.C. v. Bd. of Educ. of the Chappaqua Cent. Sch. Dist.*, 553 F.3d 165, 171 (2d Cir. 2009) (quoting *Karl ex rel. Karl v. Bd. of Educ. of Geneseo Cent. Sch. Dist.*, 736 F.2d 873, 877 (2d Cir. 1984)) (internal quotation marks omitted).

When, as here, the IHO and SRO reach conflicting conclusions, "reviewing courts are not entitled to adopt the conclusions of either state reviewer according to their own policy preferences or views of the evidence; courts must defer to the reasoned conclusions of the SRO as the final state administrative determination." *M.H.,* 685 F.3d at 246. However:

> *[T]he deference owed to an SRO's decision depends on the quality of that opinion.* Reviewing courts must look to the factors that "normally determine whether any particular judgment is persuasive, for example, whether the decision being reviewed is well-reasoned, and whether it was based on substantially greater familiarity with the evidence and the witnesses than the reviewing court.

*R.E.,* 694 F.3d at 189 (emphasis added). "But the district court's determination of the persuasiveness of an administrative finding must also be colored by an acute awareness of institutional competence and role." *M.H.,* 685 F.3d at 244. Moreover, the court must afford more deference to opinions on substance than process and therefore should place greater weight on findings that an IEP is substantively adequate, (*id.* (citing *Cerra v. Pawling Cent. Sch. Dist.*, 427 F.3d 186, 195 (2d Cir. 2005)), and is "grounded in thorough and logical reasoning," (*id.* (citing *Walczak v. Fla. Union Free Sch. Dist.*, 142 F.3d 119, 129 (2d Cir. 1998)),

9

than determinations about whether procedure has been properly complied with. *See id.* Additionally, the court should show greater deference when, as here, "its review is based entirely on the same evidence as that before the SRO." *Id*. Therefore, a court must defer to the SRO's decision on matters requiring educational expertise unless it concludes that the decision was inadequately reasoned, in which case a better-reasoned IHO opinion may be considered instead. *See R.E.,* 694 F.3d at 189.

Finally, deference to administrative decisions is particularly warranted where the IHO and SRO agree. *See C.W. ex rel. W.W. v. City Sch. Dist. of the City of N.Y.*, 171 F. Supp. 3d 126, 131–32 (S.D.N.Y. 2016).

C. Analysis of the Parents' Motion

Through their Motion, the Parents argue that the District committed the following procedural violations: first, that the District failed to comply with the IDEA's Child Find Mandate, and because of this failure, the Student suffered harm entitling him to compensatory relief. The Parents argue that the District failed to act early enough in identifying the Student's disabilities pursuant to the Child Find mandate, and, after wrongly excluding all evidence from kindergarten and first grade (and instead only considering evaluations and considerations from second grade), the Parents contend that the SRO gave an "unsupportable narrative" of the Student making progress in second grade so that the District's Child Find obligation was not triggered. *See* Parents' Mot. at 12. The Parents contend that the SRO's Child Find analysis for 2021-22 "did not consider any evidence from kindergarten or first grade," which resulted in an erroneous conclusion of law. *See id*.  In response, the District claims that the SRO did not ignore the evidence of the Student's kindergarten or first grade development, and, in fact, took that into consideration, and the child was making progress from year to year. *See* District Opp. at 29.

Second, the Parents argue that the IHO was correct in determining that they were denied participation in the decision not to provide compensatory services to the Student, and the SRO improperly rejected this finding. *See* Parents' Mot. at 28-29. The District, in response, contends that the Parents were "provided with a meaningful opportunity to participate in the CSE process regarding the Student," and the SRO decision on the subject was therefore correct. *See* District Opp. at 32.

A procedural violation of the IDEA entitles a plaintiff to relief only if it: "(I) impeded the child's right to a [FAPE]; (II) significantly impeded the parents' opportunity to participate in the decision making process regarding the provision of a [FAPE] to the parents' child; or (III) caused a deprivation of educational benefits." 20 U.S.C. § 1415(f)(3)(E)(ii); *see A.M. v. N.Y.C. Dep't of Educ.*, 845 F.3d 523, 535 (2d Cir. 2017). "That is, parents must articulate how a procedural violation resulted in the IEP's substantive inadequacy or affected the decision-making process." *M.W.*, 725 F.3d at 139. However, "[m]ultiple procedural violations may cumulatively result in the denial of a FAPE even if the violations considered individually do not." *R.E.*, 694 F.3d at 190; *see also P v. W. Hartford Bd. of Educ.,* 885 F.3d 735, 748–49 (2d Cir. 2018).

    1.  <u>Procedural Issues</u>

        i.  <u>The SRO Decision on Whether the District Complied with IDEA's Child Find Mandate is Not Entitled to Deference</u>

Under the IDEA, each State receiving federal funds must "ha[ve] in effect policies and procedures," 20 U.S.C. § 1412(a), by which it will identify, locate, and evaluate "[a]ll children with disabilities residing in the State" to determine whether these children require special education and related services. *Id.* § 1412(a)(3)(A); *see also Handberry v. Thompson,* 446 F.3d 335, 347 (2d Cir. 2006); *A.P. ex rel. Powers v. Woodstock Bd. of Educ.,* 572 F. Supp. 2d 221, 224 (D. Conn. 2008) (describing "Child Find" obligations). This "Child Find" obligation extends

also to children "who are suspected of being a child with a disability . . . and in need of special education, even though they are advancing from grade to grade. . . ." 34 C.F.R. § 300.111(c)(1); *see also C.W.L. & E.L. v. Pelham Union Free Sch. Dist.,* 149 F. Supp. 3d 451, 454 (S.D.N.Y. 2015) (noting that § 300.111(c) extends the IDEA's Child Find requirement to children "suspected of having a disability").

A Child Find violation has occurred when "school officials overlooked clear signs of disability and were negligent in failing to order testing, or that there was no rational justification for not deciding to evaluate." *P.*, 885 F.3d at 750 (quotation omitted). Thus, a state's Child Find duty is "triggered" when it "has a reason to suspect a disability, and reason to suspect that special education services may be needed to address that disability.*" J.S. v. Scarsdale Union Free Sch. Dist.*, 826 F. Supp. 2d 635, 660 (S.D.N.Y. 2011) (citing *New Paltz Cent. Sch. Dist. v. St. Pierre,* 307 F. Supp. 2d 394, 400 n.13 (N.D.N.Y. 2004)); *see also Murphy v. Town of Wallingford,* No. 10–CV–278, 2011 WL 1106234, at *3 (D. Conn. Mar. 23, 2011) ("Once a school has reason to suspect a disability, the school must conduct an evaluation of the child within a reasonable time." (internal quotation marks omitted)).  However, the IDEA's Child Find provision does not guarantee that every child with a disability will definitely be found by their school district, and the statute does not impose absolute liability. *See J.S.*, 826 F. Supp. 2d at 660 (citation omitted).

Claims that a district violated their Child Find obligations pursuant to the IDEA are subject to the IDEA's two-year statute of limitations. *See K.H. v. New York City Dep't of Educ.*, No. 12-CV-1680-ARR-MDG, 2014 WL 3866430 at *16 (E.D.N.Y. Aug. 6, 2014). Hence, the claims raised in the Parents' complaint are subject to New York's two-year statute of limitations. 20 USC § 1415(b)(6)(B); 20 USC § 1415(f)(3)(C); N.Y. Educ. Law § 4404(1)(a).

It is undisputed by both the IHO and the SRO that all Child Find claims prior to June 20, 2021 are barred by the IDEA's statute of limitations, since the Parents filed their Complaint on June 20, 2023. *See* IHO Decision at 42, SRO Decision at 14. However, through their Motion, the Parents argue that the SRO misapplied the IDEA's statute of limitations in improperly excluding all evidence from before June 20, 2021 (kindergarten and first grade) from the SRO's analysis, writing: "[I]n finding that the parents' claims prior to June 20, 2021 were barred by the applicable statute of limitations, the parents' child-find claims relating to the 2019-20 and 2020-21 school years are precluded and will not be further discussed." SRO Decision at 14. In response, the District's contends that the "SRO reviewed the Student's history in kindergarten (2019-20) and the first grade (2020-21) through both exhibits from the District and the Parents in the "Facts and Procedural History" section of his decision." District Opp. at 24 *(*citing SRO Decision at 2-3). It also argues that the Parents' claim the SRO did not review the entire record when reviewing the IHO's determination on the alleged Child Find violation is "unsupported speculation." District Opp. at 24.

However, the Court finds the argument that the SRO took the evidence prior to June 20, 2021 into consideration when coming to their decision on the alleged Child Find Violation is incorrect, as the SRO clearly considered only post-June 2021 evidence when determining that the IHO was incorrect in its finding that the District failed in their Child Find obligations. *See* SRO Decision at 14. Parents rely upon *P. v. W. Hartford Bd. of Educ.*, 885 F.3d at 750, in support of their argument that the SRO should have considered the earlier evidence before the statute of limitations commenced, but that case analyzes Connecticut's statute of limitations on IDEA claims and is thus not controlling as to the New York statute of limitations at issue in this case. In any event, Second Circuit precedent is still clear that "[a] statute of limitations does not

operate to bar the introduction of evidence that predates the commencement of the limitations period but that is relevant to events during the period." *Fitzgerald v. Henderson,* 251 F.3d 345, 365 (2d Cir. 2001); *see also Berger v. Port Auth. of New York & New Jersey*, 150 F. Supp. 2d 504, 507 (E.D.N.Y. 2001) (holding that the court may consider "all of the evidence" on the theory that is relevant background to plaintiff's claims).

Thus, the Court finds that the SRO's decision on the alleged Child Find violation is not "sufficiently thorough" enough to warrant deference because it ignored two years' worth of evidence of the Student's educational issues and progress. *See M.H.*, 685 F.3d at 248 (finding the district court's decision to disagree with the SRO was proper when the court assessed whether the SRO's conclusions were grounded in a thorough analysis). The Court may conclude that:

> [T]he SRO's determinations are insufficiently reasoned to merit . . . deference*, and in particular where the SRO rejects a more thorough and carefully considered decision of an IHO, it is entirely appropriate for the court, having in its turn found the SRO's conclusions unpersuasive even after appropriate deference is paid, to consider the IHO's analysis*, which is also informed by greater educational expertise than that of judges, rather than to rely exclusively on its own less informed educational judgment.

*See id.* at 246 (emphasis added). Therefore, the Court will now consider the IHO's analysis on the Child Find violation.

In contrast to the SRO, the IHO thoroughly evaluated the entirety of the Student's record while still acknowledging the IDEA's two-year statute of limitations. S*ee* IHO Decision at 41-44. In its decision, the IHO reviewed evidence from the Student's kindergarten and first-grade years, including, for example:

- The Student's kindergarten teacher had someone come in and observe his handwriting in kindergarten at his teacher's request. *See* IHO Decision at 10.

- The Student's first-grade teacher sent an email to Student's mother asking whether she was interested in information about at-home hand-strengthening exercises that "our" OT has shared. *See* SRO Record – Parents' Ex. LL at 11. When the mother responded questioning whether the Student needed OT services, the Student's first-grade teacher responded, "[m]y understanding is that special education is designed for students who have educational disabilities. I don't see a disability, but a weakness is evident." *See id.* at 10.

As a result of this evidence from kindergarten and first-grade, the IHO found that the Student's first-grade teacher "misstated the child-find standard and a school district's responsibility." IHO Decision at 43. The IHO also noted that, "[t]he child-find responsibility is not triggered because the child has a disability, but when there are clear signs that the child has a disability—as there were here—and when it would be negligent not to evaluate the child or there is no rational basis not to evaluate a child." *Id.*

The IHO then evaluated evidence from the Student's second-grade year. In particular, the Student's second grade general education teacher, brought the child's academic struggles to the attention of the school administrators and sought extra help for him on several occasions (*see* IHO Decision at 43-44), including, but not limited to, a referral to the Multi-Tiered System of Support ("MTSS"), which is the first step in the District's process of determining whether a child has a disability. *See* IHO Decision at 9.

In summary, the Court is persuaded by the IHO's well-reasoned and thorough analysis of the extensive evidentiary record. The Court thus reinstates the IHO's decision on the Child Find violation, which constitutes a procedural violation of the IDEA and grants summary judgment in favor of the Parents on this claim.

Federal and New York State regulations governing parental participation require that school districts take steps to ensure that parents are present at their child's IEP meetings or are afforded the opportunity to participate. *See* 34 C.F.R. § 300.322; 8 NYCRR § 200.5(d). A school district's predetermination of a child's IEP "without meaningful parental input constitutes a procedural violation" of the IDEA, which can rise to the level of a substantive harm, and therefore deprive a child of a FAPE." *J.E. v. N.Y.C. Dep't of Educ.*, 229 F. Supp. 3d 223, 234 (S.D.N.Y. 2017). "For an IEP to be predetermined, the district must not have an open mind to consider alternative programs or services during the [CSE] meeting." *Id.* at 235 (internal quotations omitted). A CSE need not always adopt a parent's recommendation, but "it may not deprive the Parent of meaningful participation by refusing to consider . . . the Parent's concerns." *E.H. v. N.Y.C. Dep't of Educ.*, 164 F. Supp. 3d 539, 551 (S.D.N.Y. 2016). That is, school districts must provide an opportunity for parents to participate in the development of their child's IEP, but mere parental disagreement with a school district's proposed IEP and placement recommendation does not amount to a denial of meaningful participation. *See E.H. v. Bd. of Educ.*, 361 Fed. App'x 156, 160 (2d Cir. 2009); *E.F. v. New York City Dep't of Educ.*, No. 12–CV–2217-MKB, 2013 WL 4495676, at *17 (E.D.N.Y. Aug. 19, 2013) (holding that "as long as the parents are listened to," the right to participate in the development of the IEP is not impeded, "even if the [district] ultimately decides not to follow the parents' suggestions"); *P.K. v. Bedford Cent. Sch. Dist.*, 569 F. Supp. 2d 371, 383 (S.D.N.Y. 2008) ("[a] professional disagreement is not an IDEA violation"); *Sch. For Language and Commc'n Development v. New York State Dep't of Educ.*, No. 02-CV-0269-JS-JO, 2006 WL 2792754, at *7 (E.D.N.Y. Sept. 26, 2006) (finding that "[m]eaningful participation does not require deferral to parent choice.").

In their Motion, the Parents assert that the IHO was correct in holding that the District denied the Parents adequate participation in the decision not to provide compensatory services to the Student, and the SRO improperly vacated this holding with little explanation. *See* Parents' Mot. at 28. The District disagrees, arguing that the SRO correctly determined that the CSE did not deny the Parents' right to participate in the decision-making process. *See* District Opp. at 32.

Because this inquiry relates to the record that was before the SRO, it would normally merit increased deference. *See M.H.*, 685 F.3d at 244 ("[T]he district court should afford more deference when its review is based entirely on the same evidence as that before the SRO. . . ."). But here, SRO's evaluation of this issue is relegated to a footnote, in which the SRO summarily finds that "the evidence in the hearing record supports that the parents were afford meaningful participation in the creation of the student's IEPs" because they "received and reviewed the evaluation reports with the evaluators prior to the May 2022 CSE meeting." SRO Decision at 26 n. 17. Moreover, the SRO declined to even come to an adequate conclusion on whether the District's response to the Student's Father at the May 2022 CSE meeting constituted a procedural violation of the IDEA. *See id.* ("With respect to the IHO's finding of a denial of FAPE because the May 2022 CSE failed to discuss compensatory services, even if I determined that this was a procedural violation, I do not find that it impeded the student's right to a FAPE, significantly impeded the parents' opportunity to participate in the decision making process, or deprived the student of educational benefits.")

However, the SRO ignored key evidence considered by the IHO, which reached the opposite conclusion. In fact, when the Student's father attended the May 2022 CSE meeting with Dr. Kelly Spagnola,[1] he expressly sought a discussion on compensatory services for his child.

---

[1] Dr. Spagnola is the District's school psychologist "assigned to the CSE chairperson." IHO Decision at 9.

*See* IHO Decision at 21. But Dr. Spagnola declined to discuss this topic with the father, stating that compensatory education was beyond what she could address at the CSE meeting. *See* IHO Decision at 21; *see also* SRO – Parents' Exhibit YY (in which Dr. Spagnola told the Student's father at the May 2022 CSE meeting that "[c]ompensatory education is outside the realm of what I can even discuss with you today [. . .]"). However, Dr. Spagnola admitted during her testimony that she had "misspoken" in her response to the Student's father in "clos[ing] the discussion about compensatory services". *See* SRO Record at T218. Dr. Spagnola stated in her November 9, 2023 testimony both that the CSE "addressed" the question on compensatory education, but admitted that there was not a "fulsome discussion of compensatory services." *See* SRO Record at T217.

Similar scenarios have been considered by other courts in this circuit, which have come to the same conclusion as the IHO (and not the SRO) that parents were denied meaningful participation in the decision-making process for a student's FAPE. *See E.H. v. New York City Dep't of Educ.*, 164 F. Supp. 3d 539, 553 (S.D.N.Y. 2016) (holding that parents were denied meaningful participation when the district "did not enter the IEP with an open-mind as to what was appropriate for [Student]" because "the CSE may consider and reject the Parent's point of view, but it may not deprive the Parent of meaningful participation by refusing to consider or the Parent's concerns.") *c.f. F.L. v. Bd. of Educ. of Great Neck U.F.S.D.*, 274 F. Supp. 3d 94, 117 (E.D.N.Y. 2017), aff'd sub nom. *F.L. v. Bd. of Educ. of Great Neck Union Free Sch. Dist.*, 735 F. App'x 38 (2d Cir. 2018) (holding that CSE members "came to the meetings with an open mind, the district staff agreed to some of the parents [sic ] requests, and . . . the parents and their counsel were afforded the opportunity to raise concerns, ask questions, rebut CSE recommendations, and provide input from private evaluators" so that parents were afforded the

opportunity to meaningfully participate.). Here, Dr. Spagnola's initial response to the Student's father, and later admission that she "misspoke[]" in constituting the CSE meeting as the improper "venue" for discussion of compensatory services (SRO Record at T218) displays a lack of adequate consideration by the District. *See E.H.,* 164 F. Supp. 3d 539 at 553-554.

Notably, in *J.E.*, the record reflected that the CSE failed to "even consider" the options desired by the parent, and as such, the SRO "did not rely on the record to satisfactorily explain why the parent was denied an opportunity to meaningfully participate in a conversation" concerning an aspect of the student's FAPE. 229 F. Supp. 3d at 237. Here, as in *J.E.*, the SRO's findings are not supported by a "preponderance of the relevant evidence", and its reasoning is "neither persuasive nor consistent with the proper inquiry." *Id.* Therefore, the Court declines to defer to its conclusion on this point. *Id.*

In summary, because the Parents were denied meaningful participation during the May 2022 CSE meeting, the SRO decision should be reversed in part, the IHO decision on this point should be reinstated in part, and the Court grants partial summary judgment on this claim.

      iii.   <u>The District's Alleged Child Find Violation Caused the Student Harm,<br>Entitling Him to Compensatory Relief</u>

Through their administrative complaint to the IHO, the Parents sought compensatory relief "in the form of a bank of hours they can draw on to provide services to Student in reading, written expression, and handwriting by a provider of their choice." IHO Decision at 51. The Parents argue that both the District's Child Find violation and the refusal to grant them adequate participation in the CSE meeting was a denial of FAPE that caused the Student substantive harm, entitle him to such compensatory relief because the violations delayed the District's provision of an IEP. *See* Parents' Mot. at 18, 29. The District disagrees, claiming that there was no Child Find violation, and that the Parents were not denied meaningful participation in the CSE meeting. *See*

District's Mot. at 32. The IHO awarded the Student a total of 240 hours of compensatory education for the denial of FAPE stemming from the Child Find violation. *See* IHO Decision at 52. Having found that the District offered the student a FAPE, the SRO found no basis for an award of compensatory education services and reversed the IHO's holding. *See* SRO Decision at 34-35. Through their Motion, the Parents request the Court (1) reinstate the IHO's award of compensatory education stemming from the Child Find violation, and (2) award "appropriate compensatory relief" for the District's refusal to consider the Parents' request for compensatory education in May 2022. *See* Parents' Mot. at 29-30.

"A violation of the Child Find obligation is a procedural violation of the IDEA," that can constitute a denial of FAPE. *K.B. on behalf of S.B. v. Katonah Lewisboro Union Free Sch. Dist.*, No. 18-CV-9553-CS, 2019 WL 5553292, at *8 (S.D.N.Y. Oct. 28, 2019), aff'd sub nom. *KB on behalf of SB v. Katonah Lewisboro Union Free Sch. Dist.*, 847 F. App'x 38 (2d Cir. 2021) (citation omitted); *L.B. v. New York City Dep't of Educ.*, No. 21-CV-1033 (VEC), 2022 WL 704712, at *4 (S.D.N.Y. Mar. 8, 2022) ("holding that [m]ultiple procedural violations may cumulatively result in the denial of a FAPE even if the violations considered individually do not."). Compensatory education is a remedy designed to "make up for" a denial of a FAPE. *P. v. Newington Bd. of Educ.*, 546 F.3d 111, 123 (2d Cir. 2008).

The IDEA permits a hearing officer to fashion an appropriate remedy for such a procedural violation, and the Second Circuit has held compensatory education is an available option under the IDEA to make up for denial of a FAPE. *See M.M. v. New York City Dep't of Educ.,* No. 15 CIV. 5846-PKC, 2017 WL 1194685, at *2 (S.D.N.Y. Mar. 30, 2017) (holding that the SRO's well-reasoned decision awarding compensatory education that would "place the

student in the position she would have occupied had the district complied with its obligations under the IDEA" was entitled to deference.).

The undersigned finds that the IHO's award of compensatory relief for the Child Find violation adequately encompasses any relief warranted for the District's denial of the Parents' participation in requesting compensatory relief. *See Melvin By & Through Martell v. Town of Bolton Sch. Dist.,* 100 F.3d 944 (2d Cir. 1996) (citation omitted) ("Appropriate relief is relief designed to ensure that the student is appropriately educated within the meaning of the IDEA."). Thus, because the Court found the same procedural violations as the IHO *infra*, the Court reinstates the IHO's award of compensatory relief and declines to award additional compensatory relief.[2]

2. Substantive Issues

    i. The Court Declines to Assess the Alleged Substantive Issues with the Student's Evaluation and Resulting IEP

In reviewing a dispute over an IEP, the district court occupies "the paradoxical position of [being] both an independent fact finder and a judicial body bound to review and

---

[2] In *Sch. Comm. of Burlington v. Dep't of Educ.*, 471 U.S. 359, 369- 70 (1985), the Supreme Court held that a school district is required to "belatedly pay expenses that it should have paid all along and would have borne in the first instance" had it offered the student a FAPE. The IHO awarded the Student compensatory education reimbursement for the denial of a FAPE for the period covering January 2022 through June 20, 202. *See* IHO Decision at 52. Because the SRO improperly found no denial of a FAPE, the SRO found "no basis for an award of compensatory education services." SRO Decision at 38. The SRO does not address the calculation of compensatory education services, and the parties do not dispute the calculations done by the IHO when it determined the award of compensatory relief. "[C]ourts should defer to the IHO's analysis when considering an issue not reached by the SRO." *C.F. ex rel. R.F. v. New York City Dep't of Educ.*, 746 F.3d 68, 77 (2d Cir. 2014). Indeed, "[d]eference to the IHO's finding is sufficient to meet the Parent's burden of demonstrating the appropriateness of the private placement." *E.H. v. New York City Dep't of Educ.*, 164 F. Supp. 3d 539, 557 (S.D.N.Y. 2016). Finally, the Court finds that the equities favor reimbursement as the court enjoys broad discretion" in considering equitable factors relevant to fashioning relief. *Florence Cty. Sch. Dist. Four v. Carter By & Through Carter*, 510 U.S. 7, 16 (1993) (citation omitted).

give deference to the findings of an administrative agency." *Wall v. Mattituck–Cutchogue Sch. Dist.,* 945 F. Supp. 501, 507 (E.D.N.Y. 1996). An IEP is substantively adequate if it "provides personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction." *D.D–S. v. Southold Union Free Sch. Dist.,* 09 Civ. 5026-JS-WDW, 2011 WL 3919040, at *11 (E.D.N.Y. Sept. 2, 2011), aff'd sub nom. *D. D–S. v. Southold Union Free Sch. Dist.,* No. 11–4697, 2012 WL 6684585 (2d Cir. Dec. 26, 2012) (quotation and internal quotation marks omitted).

Through their Motion, the Parents argue that the IHO properly held that the District failed to evaluate the Student adequately, resulting in an incorrect disability classification and inadequate IEP goals and programming in its May 2022 IEP, and the SRO later erred by reversing the IHO decision. *See* Parents' Mot. at 19-20. Moreover, the Parents argue that the SRO decision could not explain why it chose to credit the District's witnesses over the Parents' experts, who contributed independent reports that were considered and implemented in the February 13, 2023 CSE meeting on changes to the Student's 2022-23 IEP. *See id.* at 19-28. The District argues, however, that it properly evaluated the Student and provided an adequate IEP in consideration of the Student's individual needs. *See* District Opp. at 30-31. The District contends that it not need to adopt the findings of Plaintiff's independent evaluators, but only "consider" their findings, which it did when creating the Student's IEP. *See id.* at 30.

However, "[b]ecause this Court finds that the IEP is procedurally inadequate, it need not determine whether it was substantively sufficient." *See Cerra*, 427 F.3d at 192 (noting that if the IEP is "procedurally *or* substantively deficient," courts may proceed to the next step of determining whether private schooling or compensatory education is appropriate) (emphasis added); *J.E.,* 229 F. Supp. 3d at 238 (declining to assess the substantive sufficiency of the

already-determined procedurally inadequate IEP); *S.Y. v. N.Y.C. Dep't of Educ.,* 210 F. Supp. 3d 556, 573 (S.D.N.Y. 2016) ("Because the Court finds that the DOE denied [the student] a FAPE on the basis of procedural violations, it need not address the parties' arguments with respect to the IEP's substantive adequacy and [the district's] ability to implement the IEP.") (citation omitted). Thus, as this Court has already reinstated the IHO's determination of compensatory educational services resulting from the procedural violations of the IDEA *(see supra* pp. 20-21), it need not assess whether the resulting IEPs were substantively adequate.

D. <u>Analysis of the District's Motion</u>

By its Motion, the District argues that the IHO and the SRO committed an error in holding the District was obligated to fund each of the Parents' three IEE requests, so that the SRO's decision to uphold the IRO's decision should be overturned. *See* District's Mot. at 14-24. In response, the Parents argue that an IEE is an evaluation that can have multiple parts administered by multiple individuals, and the IDEA does not limit their IEE to one component of an evaluation. *See* Parents' Opp. at 7.

Here, the factual record shows that the Parents disagreed with the District's May 2022 initial evaluation and requested an IEE with three component assessments. *See* SRO Record – Parents' Ex. G. Specifically, they asked for an independent psychological report by Dr. Alyson Skinner and an independent vision assessment. *Id*. They then amended the request to include a reading assessment. *See* SRO Record – Parents' Ex. K. In response, the District declined to grant all three components of the IEE, and instead selected one IEE, the vision evaluation, of the three IEEs the parents requested. *See* SRO Record – Parents' Ex. L. Janine Villez, the District's Director of Pupil Personnel Services, further informed the Parents that because the District would be granting the vision evaluation, the District "was under no legal obligation" to file a

Due Process action to defend its decision. *Id.* at 2.  Ultimately, the Parents argue that they were forced to file a Due Process complaint to seek reimbursement for their IEE. *See* Parents' Opp. at 5.

The IDEA provides parents with "the right to an independent educational evaluation at public expense if the parent disagrees with an evaluation obtained by the public agency. . . ." *See* 34 C.F.R. § 300.502(b)(1). When a parent requests an IEE at public expense "the public agency must, without unnecessary delay, either . . . (i) [f]ile a due process complaint to request a hearing to show that its evaluation is appropriate; or (ii) [e]nsure that an independent educational evaluation is provided at public expense, unless the agency demonstrates in a hearing pursuant to Sections 300.507 through 300.513 that the evaluation obtained by the parent did not meet agency criteria." *See id.* § 300.502(b)(2).

The District argues that both statutory construction and Second Circuit precedent support its decision. *See* District's Mot. at 15-24 (citing *D.S. v. Trumbull Bd. of Educ.*, 975 F.3d 152, 162 (2d Cir. 2020)).[3] Citing 8 NYCRR § 200.5(g)(1), the District argues that "[a] parent is entitled to only one independent educational evaluation at public expense each time the school district conducts an evaluation with which the parent disagrees." District's Mot. at 16.

However, the IHO came to the following conclusion on the District's argument: "[I]t is not up to the District to make this decision unilaterally. As described above, the only two alternatives a school district has when a parent requests an IEE [are] to grant their request or seek an impartial hearing and defend its evaluation at that impartial hearing. Because the District

---

[3] The District's reliance on *Trumbull* is misplaced. In *Trumbull*, the Second Circuit assessed whether a functional behavior assessment ("FBA") is an "evaluation" that a parent can disagree with to trigger the right to request a comprehensive IEE at public expense. *See Trumbull*, 975 F.3d at 163-165. The Second Circuit held that the FBA was an assessment tool, but not an evaluation in and of itself as contemplated by the IDEA. *See id.* This fact pattern does not relate to the Parents' IEE reevaluation request in this case.

rejected two of Parents' IEE requests and did not seek an impartial hearing, it violated the IDEA." IHO Decision at 51. On appeal, the SRO found the same and recognized that "[t]he district had an affirmative duty to either grant an IEE at public expense or commence due process. The fact that the district granted one aspect of the requested IEE does not relieve the district of its obligations, because it denied the other aspects of the requested IEE." SRO Decision at 38.

The District can cite no case law that affirmatively negates its obligation to have initiated due process proceedings when it denied Parents the remaining portions of their IEE request. Instead, the District relies on its interpretation of an "evaluation" based on the "plain text of the federal regulation[]." *See* District Mot. at 21.

However, as the Parents argue in their Opposition, the District's own "initial evaluation" in May 2022 itself consisted of assessing multiple "evaluations." *See* Parents' Opp. at 8 n. 9. Indeed, district courts have agreed that IEEs can consist of several components. *See Jones v. D.C.*, No. 1:15-cv-01505-BAH-GMH, 2017 WL 10651264, at *13 (D.D.C. Jan. 31, 2017) (holding that "like any other evaluation or re-evaluation under the IDEA, the IEE may include multiple diagnostic assessments paid for at public expense" in response to defendant's "overstate[ment]" that there must be some limitation on the number of diagnostic assessments that can be conducted as part of an IEE); *see also Alex W. v. Poudre Sch. Dist. R-1*, 94 F.4th 1176, 1182 (10th Cir. 2024) (in which the court did not take issue with the original IEE containing both a speech and language evaluation and an OT evaluation as part of one IEE); *see also S.S. v. New York City Dep't of Educ.*, No. 25-CV-0217-LJL, 2026 WL 636850, at *8 (S.D.N.Y. Mar. 6, 2026) (in which the court found that plaintiff was entitled to an IEE that included multiple "tests").

As a result, the Court finds that the IEE requested was a reevaluation of the May 2022 evaluation with different components, not multiple, separate evaluations. Thus, this Court finds that the SRO and IHO did not err in finding that the District failed to justify its decision through its failure to seek a due process determination. The Court therefore defers to the IHO and SRO decisions and denies the District's claim for summary judgment.

## III.     CONCLUSION

For the foregoing reasons, the undersigned holds that the Parents' Motion should be granted, and the District's Motion should be denied.

**SO ORDERED**:

Dated: Central Islip, New York
April 14, 2026

*/s/ Lee G. Dunst*
_____

**LEE G. DUNST**
United States Magistrate Judge